UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE FIGUEROA,

       Petitioner,

v.                         Case No: 2:15-cv-195-FtM-29MRM

FLORIDA ATTORNEY GENERAL and
TOM REID, Warden,

       Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a pro se petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Jose Figueroa ("Petitioner") (Doc. 1, filed Mar. 25, 2015). Petitioner attacks the convictions entered by the Twentieth Judicial Circuit Court in Lee County, Florida in 1997 for first degree premeditated murder, first degree felony murder, three counts of attempted first degree murder with a firearm, and five counts of attempted robbery with a firearm. Id.  Respondent moves to dismiss the petition because it was untimely filed (Doc. 21). Petitioner did not file a reply to

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted).  In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections.  Therefore, the Florida Attorney General will be dismissed from this action.

the response, and his time to do so has expired (Doc. 22; Doc. 26). The petition is now ripe for review.

Petitioner raises a single claim in his petition. He asserts that he is actually innocent of the charges against him because, eleven years after his trial, the lead detective in his criminal case was discharged from his position as a law enforcement officer due to his failure to attend a training class on hostage negotiation and due to false statements made to his superiors as to the reason for his absence from the class (Doc. 1 at 5). The Court cannot reach the merits of this claim because the pleadings, exhibits, and attachments establish that the petition should be dismissed as untimely.

Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.    Background and Procedural History[2]

On December 5, 1995, Petitioner was indicted on charges of first degree murder, first degree felony murder, three counts of attempted first degree murder, and five counts of attempted robbery with a firearm (Ex. 1 at 5). The indictment alleged that

---

[2] References to exhibits and appendices are to those filed by Respondent on January 15, 2016 (Ex. 15). Citations to the trial transcript, located in Exhibit 1 will be cited as (T. at __).

Petitioner killed Gerardo Rodriguez and shot Carmen Campuzano, Jose Ramirez, and Franco Cleofas during a robbery attempt. Id. The underlying facts of this case and Petitioner's trial are relevant to his instant claim of actual innocence. In its response to Petitioner's appellate brief, the state summarized the evidence presented at trial as follows:

> Lilliana and Alejandre Cruz testified that the evening before the crime Ivan Melendez and [Petitioner] Jose Figueroa were near their house and were discussing their plans to rob some "Guatoes" or Guatemalans. Both men participated in the conversation, and [Petitioner] said he would carry a gun to scare the victims. Lilliana heard [Petitioner] use the phrase "take a life" in the course of the conversation. Her sister Alejandra testified that that evening at 7:00 pm when Figueroa and Melendez were there, she heard Melendez state that "he had to go because he was going to kill someone."

> The state also presented evidence that boxer Eric Madison testified that he saw Melendez and [Petitioner] that same evening and that they invited him to join them in robbing some victims, but that he had said, "No." Later in the evening, the two men set off; Madison heard four shots and two or three minutes afterwards, Melendez and [Petitioner] came running, short of breath and sweating saying that they had "burned" someone.

> The victims who survived the shooting testified that their two assailants had clothing over their faces, were armed and demanded "chavos", the word commonly used by Spanish speaking Puerto Ricans for money.

> Juan Alvarez testified that one evening (later determined to be within 24 hours of the crimes at trial in this case) he was driving to Lagunda Migrant Camp when he was approached

> and overtaken by a car whose driver got out of
> the car and pointed a gun at him, demanding
> "chavos" and shooting him in the leg and
> shooting at his car.  He was able to pick
> [Petitioner] Jose Figueroa's photograph out of
> a police photo-pak and to identify
> [Petitioner's] picture as that of the person
> who shot him.  The Court allowed this
> testimony into evidence to show the
> Petitioner's identity and opportunity to
> commit the crimes at bar.  The State
> established that the Lagunda Migrant Camp was
> a four minute car ride away from the murder
> scene.  Ballistics evidence established that
> gun casings gathered at the scene of the
> murder and those gathered at the scene of the
> Alvarez shooting were fired from the same gun.

(Ex. 3 at 4-5).

On July 31, 1997, a jury found Petitioner guilty on all counts (Ex. 1, Vol. IV at 78-82).  The jury recommended that Petitioner be sentenced to death.  However, the trial court overrode the jury recommendation and sentenced Petitioner to life in prison without parole on the first degree murder convictions, forty years in prison on each of the attempted first degree murder counts, and fifteen years in prison on the attempted armed robbery convictions (Ex. 1 at Vol. VI at 280-86).  On June 4, 1999, Florida's Second District Court of Appeal affirmed Petitioner's convictions and sentences per curiam (Ex. 5).

On November 14, 2000, Petitioner filed his first motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 7).  After conducting an evidentiary hearing, the post-conviction court

denied the motion on June 19, 2001 (Ex. 8). Petitioner did not timely appeal the denial, but sought leave to file a belated appeal on January 14, 2002 (Ex. 10). The motion was denied on May 1, 2002 (Ex. 12).

Petitioner filed a second Rule 3.850 motion on April 28, 2003 (Ex. 14) which was denied as untimely and successive by the post-conviction court on May 21, 2003 (Ex. 15). Petitioner appealed (Ex. 16), and Florida's Second District Court of Appeal affirmed (Ex. 18); Figueroa v. State, 866 So. 2d 1218 (Fla. 2d DCA 2003).

On August 25, 2003, Petitioner filed a motion for post-conviction DNA testing pursuant to Rule 3.853 of the Florida Rules of Criminal Procedure (Ex. 20). After securing a response (Ex. 24), the post-conviction court denied the motion without an evidentiary hearing (Ex. 25). On September 8, 2004, Florida's Second District Court of Appeal affirmed per curiam (Ex. 27). Mandate issued on October 21, 2004 (Ex. 28).

On December 7, 2007, Petitioner filed a motion to correct an illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. 32). The motion was denied in part and dismissed in part (Ex. 33). Petitioner appealed (Ex. 34), and Florida's Second District Court of Appeal affirmed per curiam (Ex. 35); Figueroa v. State, 994 So. 2d 310 (Fla. 2d DCA 2008). Mandate issued on November 24, 2008 (Ex. 38).

On May 8, 2013, Petitioner filed a third Rule 3.850 motion, raising the same "newly discovered evidence" claim as the instant petition (Ex. 40).  The post-conviction court denied the motion on April 9, 2014, and Florida's Second District Court of Appeal affirmed per curiam (Ex. 45); Figueroa v. State, 137 So. 3d 382 (Fla. 2d DCA 2014).  Mandate issued on May 8, 2014 (Ex. 45).

On October 2, 2013, Petitioner filed a petition for writ of habeas corpus in the incorrect court (Ex. 47).  The motion was transferred to a civil case (Ex. 48) and dismissed (Ex. 49). Florida's Second District Court of Appeal affirmed (Ex. 52); Figueroa v. State, 139 So. 3d 306 (Fla. 2d DCA 2014).  Mandate issued on June 26, 2014 (Ex. 53).

Petitioner delivered the instant 28 U.S.C. § 2254 petition for mailing on March 23, 2015 (Doc. 1).

## II.  Analysis

### A.   A 28 U.S.C. § 2254 federal habeas corpus petition is subject to a one-year statute of limitation

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year limitation period applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment.  This limitation period runs from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an
application created by State action in
violation of the Constitution or laws of the
United States is removed, if the applicant was
prevented from filing by such State action;

(C)   the date on which the constitutional right
asserted was initially recognized by the
Supreme Court, if that right has been newly
recognized by the Supreme Court and made
retroactively applicable to cases on
collateral review; or

(D)   the date on which the factual predicate of the
claim or claims presented could have been
discovered through the exercise of due
diligence.

28 U.S.C. § 2244(d)(1).   Petitioner does not identify the

provision of 28 U.S.C. § 2244(d)(1) that applies to his petition.

However, he does not allege that the State created an impediment

to timely filing the instant petition (§ 2244(d)(1)(B)) or that a

retroactively applicable constitutional right was recently

recognized by the Supreme Court (§ 2241(d)(1)(C)).   Accordingly,

the Court will address the remaining two provisions of §

2244(d)(1).

### 1.   **Petitioner's federal habeas corpus petition is untimely under 28 U.S.C. § 2244(d)(1)(A)**

Florida's Second District Court of Appeal affirmed

Petitioner's convictions and sentences on June 4, 1999 (Ex. 7).

Petitioner's judgment became final ninety days later - when the

time to seek review in the United States Supreme Court expired.

See Nix v. Sec'y for the Dep't of Corr., 393 F.3d 1235, 1236-37

(11th Cir. 2004); Bell v. Maryland, 378 U.S. 226, 232 (1964) (time period in which a petitioner could file a petition for writ of certiorari to the Supreme Court must be considered in calculating date on which judgment becomes final). Accordingly, Petitioner's judgment became final on September 2, 1999. Petitioner then had until September 2, 2000 to file his federal habeas petition. Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (AEDPA's one-year "limitations period should be calculated according to the 'anniversary method,' under which the limitations period expires on the anniversary of the date it began to run.") (citing Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)).

Petitioner's federal habeas petition was signed on March 23, 2015. Therefore, it was filed 5315 days late unless tolling principles apply to render it timely. "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Petitioner filed his first Rule 3.850 motion on November 14, 2000 (Ex. 6). By then, his one-year AEDPA limitations period had already lapsed. A state court motion that is filed after the expiration of the federal limitations period for § 2254 petitions does not toll the limitation period because the period has already

expired.   That   is,   there   was   no   federal   limitations   period remaining to be tolled at the time Petitioner's November Rule 3.850 motion, or any of his other subsequent post-conviction motions, were filed. See Tinker v. Moore, 255 F.3d 1331 (11th Cir. 2001).

Petitioner is not entitled to statutory tolling of the AEDPA limitations period under 28 U.S.C. § 2244(d)(1)(A).

### 2. Petitioner is not entitled to a later start date under 28 U.S.C. § 2244(d)(1)(D)

Under 28 U.S.C. § 2244(d)(1)(D), the one-year AEDPA statute of limitation begins on "the date on which the factual predicate of the [claims] presented could have been discovered through the exercise of due diligence." Id.   Although Petitioner does not specifically cite to § 2241(d)(1)(D), he now offers evidence that was unavailable at his trial and proposes an alternative starting date for the AEDPA statute of limitations.   Specifically, he asserts:

> [T]he newly discovered evidence claim was filed on January 14, 2013.   [U]pon denial by the trial judge, and ensuing appeal to the second District Court of Appeal, the one-year time limitations was tolled until the mandate issued on May 8, 2014.   Henceforth, from the filing date of this petition, 315 days of the 365 days for the filing of this petition elapsed.   Thus, this petition is being timely filed.

(Doc. 1 at 13).   Accordingly, the Court will examine whether the petition was timely filed under this section.

Petitioner points the Court to documents regarding a 2008 Lee County Sheriff's Office investigation of Lieutenant Yves Buissereth (Doc. 1-1 at 46-53).[3]   The attached documents show that Buissereth's employment with the Lee County Sheriff's Office was terminated on March 13, 2008 because he failed to attend a mandatory training class on hostage negotiation and lied to his superiors as to the reason for his absence. The report described Lieutenant Buissereth's actions as follows:

> During the course of the Internal Affairs Investigation it was determined Lieutenant Yves Buissereth violated Department Policy and Procedure by failing to attend a mandatory class as ordered by his supervisor, Lieutenant Todd Garrison.  Buissereth being a member of the Lee County Sheriff's Office Hostage Negotiation Team was ordered as well as the entire team to attend the CISM class unless they had already taken the class and were certified.  Buissereth signed up for the class on January 16, 2008.  Additionally, Buissereth notified Garrison twenty-four minutes prior to the start of class while Buissereth was working an extra-duty detail in the Gateway subdivision.  These being true the allegation of Neglect of Duty: Failure to appear/Tardiness by Lieutenant Todd Garrison against Lieutenant Yves Buissereth warrants a conclusion of Substantiated.
>
> The investigation revealed an additional violation of Policy and Procedure for untruthfulness.  It occurred when Lieutenant Garrison questioned Buissereth as to why he was working a detail instead of attending the mandatory class.  Buissereth sent an email to Lieutenant Garrison explaining why he was not

---

[3] Lieutenant Buissereth was the lead detective on the investigation of Petitioner's case.

> able to attend the class.  The email contained
> several statements that were not factual,
> deceptive and/or misleading as to the reasons
> why Buissereth was not attending the mandatory
> class.  This being a violation of Department
> Policy and Procedures the additional charge of
> Improper Conduct: Untruthfulness warrants a
> conclusion of Substantiated against
> Lieutenant Yves Buissereth.

(Doc. 101 at 52-53).  Petitioner now claims that "his discovery of Det. Buissereth's firing from the L.C.S.O. for **lying to his superiors,** and other misconduct that amounted to newly discovered evidence which clearly would show that, **he is actually innocent of the offenses that he has been wrongly convicted of and unlawfully incarcerated for over approximately 20-years now.**" (Doc. 1 at 9-10) (emphases in original).

In the context of § 2244(d)(1)(D), the Eleventh Circuit defines the "factual predicate" of a claim as the underlying vital facts of the claim. <u>Cole v. Warden</u>, 768 F.3d 1150, 1155 (11th Cir. 2014).  Petitioner does not explain how Buissereth's failure to attend a training class on hostage negotiation more than a decade after the conclusion of Petitioner's trial and Buissereth's subsequent lies to his superiors as to the reason for his absence is a factual predicate of any new claim.  Although Petitioner asserts otherwise, Buissereth's actions in 2008 constitute neither a claim nor the underlying vital facts of a claim under 28 U.S.C. § 2254(d).  Rather, Petitioner confuses the facts that make up his claim with evidence that might support his otherwise conclusory

assertions.[4]  The vital facts making up the "claims" discussed in the petition were available to petitioner long before he allegedly discovered that Buissereth was disciplined on completely unrelated matters.  At most, Buissereth's discipline could be used for impeachment purposes at a new trial – it is not a vital fact comprising any claim so as to implicate § 2244(d)(1)(D). Accordingly, Petitioner is not entitled to a later start date under § 2244(d)(1)(D).

---

[4] Petitioner asserts that Buissereth used his position as a law enforcement officer "to coerce snitches to falsely testify against him." (Doc. 1 at 5-6).  He alleges that Buissereth used "unethical tactics" to force witnesses to identify Petitioner as the killer. Id.  These claims were available to Petitioner at trial.  In fact, this was the gravamen of Plaintiff's defense at trial.  Defense counsel strenuously cross examined Buissereth about the "persistence" he used to get witnesses to identify Petitioner as the killer (T. at 529, 530, 531, 533, 536).  Defense counsel also questioned Buissereth as to whether he was aware that four witnesses had accused him of "forced statements." (T. at 551). During closing statement, defense counsel argued that Buissereth had pressured witnesses into identifying Petitioner as the killer. Id. at 640, 642, 649, 660.  Defense counsel described Buissereth as "a disgrace.  This man has manufactured evidence, I – four witnesses testified he forced them to do statements . . . [f]or whatever reason, Buissereth decided Jose did the crime, Buissereth, in his warped mind, said I am going to get the evidence.  I'll get the evidence.  He got it." Id. at 688-89.  The Eleventh Circuit has been clear that evidence known to petitioner at the time of trial is not "new."  See Frederick v. Sec'y, Dep't of Corr., 481 F. App'x 472 (11th Cir. 2012) (describing as "unavailing" any argument that evidence known to petitioner at trial was "newly discovered evidence."); Rozzell v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1016-19 (11th Cir. 2012) (same).

> **3. Petitioner has not demonstrated "actual innocence" so as to excuse his failure to comply with the AEDPA's one-year statute of limitation**

Petitioner asserts that the evidence of Buissereth's wrongdoing shows that he (Petitioner) is actually innocent of the charges for which he was convicted (Doc. 1 at 10). The Supreme Court's decision in McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), provides that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup [v. Delo, 513 U.S. 298 (1995)] and House [v. Bell, 547 U.S. 518 (2006)], or [the] expiration of the [AEDPA] statute of limitations." Id. at 1928.

In Schlup, the Supreme Court held that a prisoner otherwise subject to procedural bars on the filing of abusive or successive writs of habeas corpus may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence. 513 U.S. at 326–27. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327. Because this standard is intended to focus the inquiry on actual

innocence, "the district court is not bound by the rules of admissibility that would govern at trial." Id. "Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." Id. at 327-28. Indeed, "[t]he habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." Id. at 328 (internal quotations omitted). "It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." Id. at 329. "Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id.

The procedural posture of the instant situation is different from that presented in McQuiggin. McQuiggin pleaded guilty to murder and was sentenced to life in prison. Perkins v. McQuiggin, No. 2:08-CV-139, 2009 WL 1788377 (W.D. Mich. June 18, 2009) ("McQuiggin I"). Thereafter, McQuiggin obtained three affidavits

which he claimed would prove his innocence, yet he waited nearly six years before presenting his newly discovered evidence to any court; in fact, there is no indication that McQuiggin ever presented his actual innocence claim to the state courts. Id. at *3.   In contrast, Petitioner's state post-conviction court considered his actual innocence assertion when it was raised in his third Rule 3.850 motion as a claim of newly discovered evidence (Ex. 40).   In rejecting this claim, the state post-conviction court found, "[t]hat the detective allegedly behaved improperly in an unrelated matter 11 years after Defendant's trial is not in any way proof, as Defendant alleges, that the detective behaved improperly in investigating this case." (Ex. 41 at 3).[5]

As noted in the discussion of § 2244(d)(1)(D), Detective Buissereth's alleged coercion of witnesses was the crux of Petitioner's defense at trial, and the jurors were well aware of Petitioner's defense theory that Buissereth strong-armed the witnesses into identifying Petitioner as the assailant. See discussion supra Part II(A)(2).   Even so, all twelve jurors voted

---

[5] Although this Court concludes that AEDPA deference to the state court's findings on this issue is not required (because the entire purpose of a gateway review is to consider whether the petitioner is entitled to have the federal courts review his claim under the AEDPA), the state court's reasoning and conclusions are helpful when considering whether any juror, "acting reasonably, would have voted to find [Petitioner] guilty beyond a reasonable doubt." Schlup, 513 U.S. at 329.

to convict him.    Given the unanimous jury finding at trial, Petitioner has failed to demonstrate that no reasonable juror could now conclude that Petitioner was guilty of the crimes of which he was charged – even when considering Petitioner's new evidence of Buissereth's disciplinary proceedings in a completely unrelated matter thirteen years after the crimes at issue.    Petitioner has failed to satisfy McQuiggin's actual innocence exception to the AEDPA statute of limitation, and this petition must be dismissed as untimely.

### B.   Certificate of Appealability[6]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional

---

[6] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id.   As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   The Florida Attorney General is **DISMISSED** as a named Respondent.

2.   The petition for writ of habeas corpus filed by Jose Figueroa is **DISMISSED WITH PREJUDICE** as time-barred.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this   21st   day of July, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Jose Figueroa
Counsel of Record